## The Inhabitants of RUTLAND, Petitioners, *versus* THE COUNTY COMMISSIONERS' OF WORCESTER.

After the record of an inferior tribunal has been brought up on certiorari, evidence extrinsic to the record, in regard to the proceedings of such tribunal, is inadmissible.

Upon a petition for a certiorari, the petitioner is not allowed to introduce extrinsic evidence to contradict the record of the inferior tribunal or to show its proceedings to have been erroneous, but such application being addressed to the discretion of the Court, the respondent may introduce evidence extrinsic to the record, to show that substantial justice has been done, or that for any good reason a certiorari ought not to be granted, and the petitioner may then introduce like evidence to rebut the evidence on the part of the respondent.

A certiorari ought not to be granted, even if the record of the inferior tribunal, when returned, would appear to be defective or informal, where substantial justice has been done, or where, if the proceedings are quashed, ruinous or very mischievous consequences would ensue and the parties cannot be placed *in statu quo*.

By Revised Stat. *c*. 24, § 6, if at the time when the county commissioners view a route for a highway, any person interested shall appear and object to its being laid out, the commissioners, after adjudicating the way to be of common convenience and necessity, are required to give further notice to all persons interested, before they proceed to lay out the way.

But such additional notice not being necessary to give the commissioners jurisdiction of the case, it may be waived by the party interested.

Where, upon a petition to the county commissioners to lay out a highway through several towns, the commissioners gave legal notice to all persons and corporations interested, and thereby acquired jurisdiction of the case, and upon their adjudication that the way was of common convenience and necessity, gave informal notice to one of the towns, of the time and place when and where they might be heard on the subject of laying out the way, upon which notice the town might have acted and all their rights have been preserved, but they neglected to act upon this notice, and the way was laid out, and so much of it as lay within the other towns was constructed by them respectively, but the town in question disregarded the order of the commissioners requiring them to construct, before a certain day, so much of the way as lay within the town, and thereupon the same was constructed by the commissioners and the expense paid out of the county treasury, and a warrant was about to be issued against the town to reimburse the county, it was *held*, on the petition of the town for a writ of certiorari to the commissioners, that such writ ought not to be granted, inasmuch as by quashing their proceedings great injustice would be done to the county, and for which probably there could be no remedy.

A county commissioner residing in one of several towns through which a highway is proposed to be laid out, is interested in the question whether the way shall be laid out, but after a board composed of disinterested commissioners only, have adjudicated that the way is of common convenience and necessity, and determined on certain points by which it is to run, he is not disqualified, by reason of being so interested, from acting in laying out any section in another town, which cannot affect the course of the way within the town in which he resides.

THIS was a petition, filed in this Court at November term 1837, in which the petitioners represent that the county com-

missioners of the county of Worcester heretofore located a highway through the town of Rutland, upon the application of Willard Snow and others, and ordered the present petitioners to make the road, or cause it to be made, before the 20th of September, 1837, but that the petitioners, believing the proceedings of the commissioners to be unlawful and unauthorized, neglected to make the road or cause it to be made, and the commissioners caused it to be made, and, at their last meeting, accepted it, and have caused the expenses thereof to be paid from the treasury of the county, and have determined to issue their warrant against the petitioners for the sum so paid and interest thereon, amounting to more than $12,000, which warrant the petitioners are informed will be issued at the meeting of the commissioners next to be holden on the fourth Tuesday of March 1838, unless the same shall be stayed by the order of this Court ; and the petitioners pray for a writ prohibiting and restraining the commissioners from issuing such warrant, until the legality of their proceedings in locating the road, and their right by law to issue such warrant, shall be heard and determined by this Court upon a petition for certiorari, which these petitioners have made to this Court and have caused to be served upon the commissioners, returnable to this Court at the April term 1838, at Worcester.

The petitioners further state, that upon the hearing of the petition for certiorari, they expect to prove ; —

1. That the highway was located by the commissioners without having given any notice to the petitioners of their proceeding to locate the same, as is required by law.

2. That the highway was not located by three disinterested commissioners, although in the original hearing in regard to the view of the same there were opposing parties who appeared before the commissioners.

3. That John W. Lincoln, Esquire, acted in the location, and was one of the commissioners, although a part of the road as prayed for and adjudicated to be of common convenience, and as since located, lies within the town of Worcester, wherein Lincoln then and ever since has resided, and that a board of the commissioners might have been organized to locate the road, without including Lincoln or any other com-

missioner residing in any town in which the road lies ; and
that Ebenezer D. Ammidown, one of the commissioners, was
able to have attended in the place of Lincoln.

To this petition the county commissioners filed an answer
at the present term, in which they state, that Snow and others
petitioned.the commissioners to view a route for a road com-
mencing at or near the store of Charles Lee in Barre, thence
to or near Cold Brook village in Oakham, thence through a
part of Oakham and a part of Rutland to or near the meeting-
house in Paxton, thence to the junction of the old and new
county roads at or near the mills of Rejoice Newton in Wor-
cester ; and to locate such route as a public road, and cause
the road to be constructed, if in their judgment the public
convenience and necessity should require the same ; that
thereupon the commissioners gave notice to all persons and
corporations interested in the petition of Snow and others,
that the commissioners would meet at the public house of A.
Hathaway in Barre, on Monday, October 10, 1836, at 2
o'clock P. M., and would then and there proceed to view the
route set forth in such petition, and would hear all persons and
corporations interested therein, who might wish to be heard
concerning the same, and if the commissioners should adjudge
that the prayer of the petition ought to be granted, would pro-
ceed to locate and establish a new county road as aforesaid,
and to assess all such damages as any person or corporation
might sustain by such location.

The respondents further say, that a board of county com-
missioners consisting of Ebenezer D. Ammidown, one of the
county commissioners, and Ephraim Stone and Benjamin Da-
venport, the two special commissioners, met at Hathaway's at
the time above specified, for the purpose of performing the
duties set forth in the notice ; that the board was thus organ-
ized, because John W. Lincoln and William Crawford, the
two other county commissioners, resided, the one in the town
of Worcester and the other in Oakham ; that the commission-
ers, thus organized, then and there proceeded to view the
route prayed for, and to hear all persons and corporations
interested therein, from day to day, until Friday, the 14th of

Rutland
v.
County
Commis-
sioners of
Worcester.

October, and on that day, at Hathaway's, adjudged the road prayed for to be of common convenience and necessity.

The commissioners further say, that at the time of the view they heard the town of Rutland by their agent, and that at the hearing and before the above adjudication was made, they gave public notice, in the presence of the town of Rutland, who were there by their agents, that if they, the commissioners, should adjudge that the road prayed for ought to be grant- ed, they would, on Monday then next (October 17th), pro- ceed to locate the road, if no objection was made thereto by any person or corporation, and that in the presence of those agents they made public inquiry whether any person did or would object to the location being made on Monday, in case they should adjudge the road to be of common convenience and necessity, and no objection was made, and thereupon they adjourned till Monday, for the purpose of proceeding forth- with to locate the road.

The respondents further say, that the board of commission- ers, constituted as above mentioned, having, on the 14th of October, adjudicated the road to be of common convenience and necessity, then determined to proceed, on Monday, Oc- tober 17th, to locate the road from Lee's store in Barre, through Oakham and Rutland, to a point in Paxton in the county road leading from the meetinghouse in Paxton to Worcester, which point is more than two miles from the dividing line between the towns of Paxton and Worcester, and that the location from Barre to this point did not and could not in any way affect the town of Worcester, or the location of the road in that town ; and that, on the 17th of October, Ammidown was unable to be present at the location, and a board of commissioners was formed at Barre, consisting of Lincoln, Stone and Davenport, and the commissioners, being thus organized, and no objection being made by any person thereto or to the location, proceeded to locate and did locate the road from the place of beginning in Barre through Oakham and Rutland, and in part through Paxton, towards the point above mentioned, in pursuance of the adjudication and determination above mentioned, and assessed the damages

which all persons and corporations sustained by the location of such part of the road.

The respondents further say, that on the 17th of October they began in Barre to locate the road, and continued locating it in that town until the 22d, on which day, in that town, Jeduthun Green, an agent of Rutland for that purpose duly authorized, and Rowland Wheeler, were present before the commissioners, and the commissioners informed them that the commissioners would be at Cold Brook in Oakham on the 24th, at the house of C. C. P. Hunt, and would then and there hear them and the town of Rutland in relation to the location of the road and the matter of an allowance to the town, and on any other matter touching the road, and the commissioners continued locating from the 22d to the 24th, on which day they met the same duly authorized agent of Rutland, and Wheeler, and another inhabitant of Rutland, at Hunt's house, and then and there fully heard them, and the town by such duly authorized agent, in relation to the locating of the road through Rutland, and the route which the town would prefer, and in relation to the allowance which should be made to the town ; and neither the town, nor Wheeler, nor the other inhabitant of Rutland, nor any other person, made any objection to the commissioners' proceeding to locate the road in Rutland forthwith, although they well knew and were fully informed, that the commissioners were about to proceed forthwith to locate the road through Rutland.

The respondents further say, that immediately upon the location of such part, the inhabitants of Barre, Oakham and Paxton proceeded to construct, according to the order of the commissioners, so much of the road as was located within their respective towns ; and all the persons and corporations who sustained any damage by the location of so much of the road as was located within the limits of Rutland, have taken and received from the county treasury the sums respectively assessed in their behalf by the commissioners.

The respondents admit, that long before the road was to have been made, they had heard that the inhabitants of Rutland objected to the legality of their proceedings, and they say, that not knowing the causes of objection, and being

willing that the same, if valid, should be early ascertained and legally determined, they some time in March 1837 requested David W. Fletcher, one of the selectmen of Ru° land, to cause the town to make application to this Court then next to be held at Worcester in April 1837, to quash the commissioners' proceedings or to correct any wrong there-in, if the town intended to insist upon any of their objections, but the town made no such application until after the time when the road was to have been completed, viz. the 20th of September 1837, nor until after the commissioners had caused the part in Rutland to be made and paid for out of the treasury of the county, although the town were fully informed that the commissioners intended to cause this part to be made as soon as might be after the 20th of September, if the town of Rutland should neglect to make the same.

In the record of the commissioners laid before the Court, it is stated, that the commissioners gave notice to all persons and corporations interested in the petition of Snow and others, that the commissioners would meet at Barre on the 10th of October 1836, and would " proceed to view the route set forth in said petition, and hear all persons and corporations interested therein, who might then and there desire to be heard thereon, and if they should adjudge that the prayer of the petition ought to be granted, then to locate and establish a new county road, as aforesaid, and to assess all such damages as any person or corporation might sustain by said location. And the said county commissioners having met &c., proceeded to view the route &c., and having heard all persons and corporations in relation to said petition, who desired to be heard thereon, it was by said commissioners considered and adjudged, that common convenience and necessity did require that the prayer of the petition should be granted. And no person, whether interested or otherwise, having objected to the county commissioners' proceeding to lay out the public highway as prayed for, without giving any further notice, either at the time of the view as aforesaid or afterwards, they proceeded to lay out, locate and establish a new county road as follows," &c.

The record further states, that John W. Lincoln and Wil

iam Crawford, " being residents in towns named in said petition, did not act in the view, hearing and adjudication thereon &c. ; and that after the adjudication aforesaid and the promulgation thereof, Ebenezer D. Ammidown, Esquire, one of the county commissioners, being obliged to be absent, his place was supplied by John W. Lincoln in the location and assessment of damages."

*Hoar* and *E. Washburn*, in support of the petition, proposed to prove by witnesses, that the record of the county commissioners was erroneous, in stating that notice had been given to all persons interested, before the commissioners proceeded to lay out the way, and that no person objected to their laying it out ; and in stating that Ammidown was " obliged to be absent " at the time of the location in Rutland. They said they did not intend to contradict the journal of the proceedings of the commissioners as to any judicial act, but only as to ministerial acts, in regard to which it was not in strictness a record. *Gerrish* v. *Morss*, 2 Pick. 628 ; *Ipswich, Petitioners &c.*, 13 Pick. 431 ; *Commonwealth* v. *Bolkom*, 3 Pick. 282 ; *Williams* v. *Blunt*, 2 Mass. R. 213 ; *Lancaster* v. *Pope*, 1 Mass. R. 86 ; *Commonwealth* v. *Coombs*, 2 Mass. R. 489 ; Revised Stat. c. 84, § 5.

*Sprague* and *Merrick*, for the respondents, said that evidence against the record was not admissible, but that the Court would hear evidence to support the record and to show that substantial justice had been done ; *New Salem, Petitioners*, 6 Pick. 473 ; *Fuller* v. *Plymouth County Commissioners*, 15 Pick. 81 ; *Freetown* v. *Bristol County Commissioners*, 9 Pick. 50.

*Per Curiam.* This is an application for a prohibition to the county commissioners, to prevent their issuing a warrant against the town of Rutland, until a petition for a certiorari can be taken into consideration, and the petitioners propose to show that when the question of granting a certiorari shall be heard, they can prove such errors as will require the proceedings of the commissioners to be quashed. A petition for a writ of certiorari is well understood to be addressed to the discretion of the Court. When the record is before the Court upon the return of the writ, the Court will look only

*March* 20th

*March* 21st.

at the record ; for this reason it would be futile to admit evidence to contradict the record, on the petition for a certiorari ; but it being within the discretion of the Court to grant or refuse the writ, evidence extrinsic to the record may very properly be received, to show that no injustice has been done, and that a certiorari ought not to be issued. The petitioners in the case before us, will in the first place exhibit the record and point out in what particulars they deem it to be erroneous or defective ; and then the respondents may prove by extrinsic evidence, that no injustice has been done, that if the proceedings shall be quashed, the parties cannot be placed *in statu quo*, or that for any good reason a certiorari ought not to be granted. If such evidence shall be offered by the respondents, the petitioners will of course have a right to rebut it by like evidence.

The respondents being directed by the Court to introduce their evidence, if they intended to exhibit any, Lincoln and Davenport were examined in support of the proceedings of the commissioners ; and *Washburn* called a witness and read several affidavits to rebut their testimony.

*Hoar* and *Washburn* now contended, that as at the time of the view a party interested appeared and objected that the proposed highway was not of common convenience and necessity, it was the duty of the commissioners to give further notice to all parties interested, before they proceeded to lay out the way. Revised Stat. *c.* 24, § 6 ; *Ex parte Weston*, 11 Mass. R. 417 ; *New Salem, Petitioners*, 6 Pick. 473 ; *Gerrish* v. *Morss*, 2 Pick. 628 ; *Freetown* v. *County Commissioners of Bristol*, 9 Pick. 46.

County commissioners are judicial officers, and should therefore be appointed by the governor ; but the respondents were elected by the people, and consequently their proceedings were unauthorized and void. Constitution, *c.* 2, § 1, *art.* 9.

The board of commissioners by whom the highway was laid out, was not legally constituted, inasmuch as a part of the road lies in the town in which one of them resided, and who therefore was not disinterested. Revised Stat. *c.* 14,

§ 26, 27.   The record states that Ammidown was "obliged to be absent," but the evidence is that he merely had an engagement as an agent for constructing a rail-road ; which is not the *inability* contemplated by the statute.

*Sprague* contended that the double notice given by the commissioners, that they would view the road, and that if they should adjudge it to be of common convenience and necessity, they would then proceed forthwith to lay it out, was a legal and valid notice.   But if not, then it is a question of construction of the statute, whether by the *objection* of the party is meant an objection to the laying out, or an objection to the adjudication that the way is of common convenience and necessity ; if the former, then this record is full, if the latter, it is defective in not stating that after the adjudication a new notice was given in regard to the laying out.   No injustice however has been done, and under the circumstances of the case the Court, in the exercise of its discretion, will not award a writ of certiorari.

SHAW C. J. delivered the opinion of the Court.   On the question whether the county commissioners are constituted in a manner not conformable to the requisitions of the constitution, the Court do not feel called upon to give an opinion. If the whole organization is contrary to the constitution, and all its proceedings are void, there would seem to be no occasion for, and no fitness in sending to them, either a writ of prohibition or of certiorari.   Their proceedings would be a mere nullity.

This application is merely ancillary to the petition for a certiorari, and sought for, to keep things *in statu quo*, until the other petition can be heard and acted upon.

If the claim for a writ of certiorari cannot be supported, then this writ would be useless ; therefore the petitioners have very properly laid before us, the petition for a certiorari which they propose to present hereafter to this Court when sitting in April.

That petition sets forth the grievances, of which they complain, and both may well be considered together.

These applications are both to the discretion of the Court, and ought not to be granted, even if the record, when returned

*Margin:* Rutland *v.* County Commissioners of Worcester.

*Margin:* March 22d.

on certiorari, would appear to be defective or informal, where substantial justice has been done, or where, if the proceedings are quashed, ruinous or very mischievous consequences would ensue, and where, upon such reversal of proceedings, parties cannot be placed *in statu quo.*

The first complaint of the petitioners is, that they had no legal notice of the location of this road, as provided by statute. Revised Stat. *c.* 24, § 6.

The Court are inclined to adopt the construction of the statute, claimed by the petitioners, that the case where the commissioners, after the adjudication that a highway is of common convenience and necessity, may proceed to lay it out without further notice, is, where on the view and previously to the adjudication no person has appeared to object to the proceedings, and where, in effect, the matter proceeds by consent. We therefore are of opinion, that, as there was an appearance, and opposition to the establishment of the road in the present case, it was not within the exception, and that there ought to have been a further notice, conformably to the statute, unless such notice was waived, or the party complaining agreed or consented to an informal notice.

The argument then is, that if the notice was not given conformably to the statute, the parties were not regularly before the commissioners, the proceedings were without their jurisdiction and void. But we think that this conclusion does not follow. In the first place, it appears, that the petition was duly filed, and that a notice issued strictly conformably to law, so that the parties and the subject matter were fully before the commissioners. They had jurisdiction both of the parties and of the subject. All the subsequent proceedings were steps in the same cause ; and although the statute directs that notice shall be given as well of the hearing on the petition for a highway, as of the view and laying out, yet such second notice was not necessary to give the commissioners jurisdiction, it was required for the benefit of those interested, and therefore each of the parties thus interested might waive the statute notice, and take a shorter or more informal notice, so far as their own rights were concerned.

Then whether upon an examination of the record alone,

it would sufficiently appear that such notice was not given, it is not necessary to consider, because the Court are of opinion, that in this stage of the inquiry the question is, although such notice does not appear, by the record, to have been given, still whether the party complaining has suffered any wrong or injustice from such a defect. If the notice required by law was in fact given, although it does not appear on the record, or if such notice was given as sufficiently to apprize the town, of the intended proceedings, and they might have availed themselves of it ; and more especially, if the town, knowing of the supposed defect, were willing to lie by until the proceedings were carried into effect, without stating their objection, they cannot complain of any wrong done them.

Suppose the commissioners, by a misconstruction of the statute, give notice in fact to the town or its agents, in a mode not conformable to the statute, and are proceeding in the belief that the notice is valid, and the town, in the expectation of getting some advantage, voluntarily suffers them to proceed, without objection, they cannot afterwards be heard to complain that they have suffered for want of notice.

Now the Court are all satisfied on the evidence offered in this matter in behalf of the respondents, to guide the discretion of the Court, that, when the adjudication was made, or very shortly after, it was known to the town by its agents, that at the time of such adjudication, it was notified to all parties concerned, that the commissioners would proceed to locate the road at a time then fixed, that notice was given to the town, by one of its agents appointed to see to the interest of the town, as well in the location as the viewing and establishing such highway, that the commissioners would hear the town both upon the subject of location and upon the subject of the amount to be allowed to the town from the county treasury, and that this was done before they proceeded to lay out that part of the road which lay in Rutland, and fixed a convenient time and place for that purpose. It may be considered the duty of that member of the committee, under the trust reposed in him as one of the agents of the town chosen for this purpose, to give this notice to the other agents of the town,

and it must be presumed that he did so.   It further appears, that at the time and place assigned, the commissioners did attend, and the same member of the committee also attended, and though he states that he intended to appear in his individual capacity and not for the town, yet he had an opportunity to act in behalf of the town, and the commissioners considered him as the agent of the town and acted upon his suggestions, by examining the route which the petitioners now say they would have preferred, and would have proposed.

It further appears, that the petitioners were apprized of these supposed defects, as early as December 1836, before any order had passed, requiring the town to make the road, and by communicating their wishes to the commissioners there was time to correct any error in this matter by giving them a more formal notice, and proceeding to a new location ; but no such application was made to the commissioners.   In December the order passed requiring the town to make the road previously to the end of the next September, and notice of this was served upon them early in January.

In March, the commissioners, by their chairman, informally stated to one of the selectmen of Rutland, that if the town had any intention of calling in question the validity of the proceedings, it was desirable that it should be done before the then ensuing April term of the Supreme Judicial Court, in which case they would suspend all further proceedings till their legality could be settled.   This was no doubt communicated to the other selectmen of the town, but no such application was made.   It is stated by the witness, Fletcher, that he did not consider this as an official communication, which they were bound to take notice of.   It was not made as an official communication.   But the object was a proper and reasonable one, that if their proceedings were irregular or erroneous, they might be corrected, before the rights of others were irretrievably committed.   It was not in the power of the commissioners, officially to institute any legal measures to try the validity of their own proceedings , they must of necessity wait, till these proceedings were called in question by others.   This informal communication has no bearing on the legality of the proceedings of the commission-

ers, in locating the road ; but we think it has a strong bearing upon the question, as one of discretion and expediency, whether the Court at the instance of these petitioners, ought to aid in causing these proceedings to be quashed, after the county has been compelled to pay the whole amount of the cost of the road, when, if the petitioners had proceeded as requested, the same question might have been determined before the expense had been incurred. No satisfactory reason has been given why the petitioners, if they considered themselves aggrieved by the illegal or erroneous proceedings of the commissioners, did not present their petition for a certiorari, either at the April term 1836, of the Supreme Judicial Court, or at the ensuing October term. The commissioners, after the time fixed by their order for making the road had expired, and being informed of no objection to their proceedings, were bound in justice to the other towns, who had complied with their order, to take measures for making this road if the town of Rutland failed to do it. In July they publicly advertised for contracts to be taken on the 20th of September, the time originally fixed for making the road, after which there was ample time for the petitioners to have preferred their petition to the Supreme Judicial Court for a certiorari and to have given the commissioners notice. But no step was taken by them till the contracts were made, the county bound, and the money paid out of their treasury. Under these circumstances, the Court are of opinion, that the proceedings ought not to be quashed, unless for some substantial injustice done to the petitioners, some loss or inconvenience brought upon them, in the course of these proceedings, which they could not have avoided. If notice was in fact given, upon which the town could have acted, and upon which all their rights could have been preserved, and they did not choose to act upon that notice, the jurisdiction having been secured by a former legal notice, this want of a precise formal notice according to the statute, is not such a substantial illegality as to justify the Court in quashing the proceedings, when upon their being thus quashed, great injustice would be done to the county, and for aught that appears, they would be without remedy.

The petitioners complain in their petition, not only that the

Rutland
v.
County
Commis-
sioners of
Worcester.

proceedings in the location were made without notice, as required by the statute, but that of those proceedings they were wholly uninformed. The latter assertion, if intended to be understood literally, is not supported, but is contradicted and disproved by the evidence. They were informed of the preliminary proceedings, to a certain extent they were heard by the commissioners, and to any extent they might have been heard, had they chosen to avail themselves of the information.

The consideration which weighs strongly with the Court is, that if there be error in the proceedings, it is rather in the nature of an informality, by which the defendants suffered no injustice ; that if they considered it otherwise, and really desired to be heard by the commissioners on the question of location, they had ample time to do it ; that if they intended to insist on the want of legal notice, and to reverse these proceedings on that ground, they had full opportunity to do so before the rights of others would be injuriously affected by the reversal, but voluntarily forebore to do it ; and that to quash the proceelirgs now, would tend injuriously to affect the rights of the county and of other towns, to a great extent.

2. The other principal objection urged to this proceeding is, that John W. Lincoln, Esquire, the chairman of the county commissioners, acted in the location of this road through the town of Rutland, although he was interested in the subject matter. The Revised Statutes consider a commissioner who is a citizen of the town, or one of the towns, through which the road is to pass, as *quasi* interested, and not competent to act in that capacity, when such interest exists, unless where a board cannot be organized without. But the Court are of opinion, that it does not sufficiently appear upon the record, that the chairman, Mr. Lincoln, was so interested in the present case. It is to be considered that there is a manifest distinction between the original adjudication and the subsequent location, in this respect. The original petition was for a public highway, beginning at the common in Barre and extending through various points to Newton's mills in Worcester. This was to be considered as a whole, embracing the entire extent between the *termini*. It embraced therefore a section within the town of Worcester, and in regard therefore

to this preliminary question Mr. Lincoln had the interest contemplated by the statute. But on this part he did not act. The petition was heard and decided by a board otherwise constituted, and of which there is no complaint.

But we think that after the adjudication of common convenience and necessity embracing the whole route, and when the location came to be made, the question was different. By the very effect of this previous decision, adjudging the way as prayed for in the petition, the *termini* were fixed, and also various intermediate points were fixed, which could not be altered or affected by the location, one of which was a point near Paxton meetinghouse. This *adjudication necessarily* broke the whole line into several sections, having their respective fixed *termini*, and a commissioner might have an interest in regard to one, and not in regard to another, and might therefore act on one as disinterested, though from his habitancy, he might be interested in another. This occurred in another instance on this same road. Mr. Crawford, one of the commissioners, residing in Rutland, acted in Paxton only, and did not act in the laying out, so far as that town was concerned. Mr. Lincoln acted in laying out this road through Rutland, and as far down towards Worcester as Paxton, but no further. Whatever might have been his interest in that section of the road which lay in Worcester, we think he had none in that part which lay through Rutland, and therefore that the proceedings are not erroneous and not liable to be quashed on that account.

These are the leading and principal objections urged. The Court are of opinion that they are not such as to warrant or require them, in the exercise of the high discretionary authority vested in them, to interpose in this stage to stay the proceedings of the commissioners, in favor of the town of Rutland, under the circumstances as they have been presented before us, and therefore, that this petition be dismissed.